Step up, identify yourselves. Remember, this is not a microphone. This is a recording device, so you'll have to keep your voices up in order to compete with the traffic on LaSalle Street. Good morning, Your Honors. My name is Jonathan Krieger. I represent Cesar Garcia. Good morning. Assistant State's Attorney Michelle Hensville for the people of the state of Illinois. Thank you, Your Honor. Please proceed. Thank you. May it please the Court, again, my name is Jonathan Krieger. I represent Cesar Garcia. In this case, my client was stopped by a police officer for littering. The officer, without evidence of another crime, grabbed a plastic bag out of my client's pocket. This was an unreasonable search, and the drugs should therefore be suppressed. All right, Mr. Krieger, it is a simple case. Everything is laid out, but is enough laid out? Do we know how much of that plastic bag was outside of the pocket when the officer observed it? According to Officer Romano's testimony, she saw two to three inches of plastic that was outside of the pocket. Did she testify whether or not she saw the knotted portion of the plastic bag outside of his pocket? She testified, she initially testified that there was two to three inches, but she was eventually let, during the leading question, answer that there was, it was indeed a knotted piece of plastic. What's important is that she didn't see what was inside, the fact that the bag was transparent. When she initially testified on direct examination that there were two to three inches, correct, but then only on cross-examination did she indicate that the bag was knotted, is that correct? That's right, Your Honor. By then, she already knew the condition of the bag, right? Because she had already recovered it. That's correct, Your Honor. And so the question is whether or not her testimony at the time was that she saw the knotted portion, and at least on direct examination, she made no such claim. I think that's right, but even if her, not rehabilitation, but her statement on cross-examination is believed, it wouldn't make a difference. And just so it's clear, the extent of her answer on cross-examination was a single word? Yes. Yes, that was the word. But even if the bag, even if she testified initially. So to some extent, the question itself assumed facts not in evidence. That's right, Your Honor, but leading questions are permissible. But they're not allowed to assume facts not in evidence. That's right. Does it? Yes. And to the extent that it's not objected to, do we leave it as it is? Yes. And you're asking us not to take it at face value. Why shouldn't we? We're saying that there's a Fourth Amendment violation either way. But there's only a Fourth Amendment violation if she saw nothing that would indicate, that would give her probable cause to seize it. And there's no dispute that she didn't see any, I'm sorry. But what about the knot in the bag? How many items, or let me ask you, how many plastic bags knotted in the way that it was in this case, have you ever had around your pocket? I've tied plastic bags knotted all the time. When I go on vacation, I take vitamins. What would you put in those bags? When I go on vacation, I take vitamins with me and I'll put them in there. I don't want to take the whole canister, so I put it in my pocket. And if I don't have a little tie, that's how I would personally do it. In any event, there was no testimony that, as in the other cases, that a particular distinctive configuration would indicate that there was drugs being used in the bag. Let me get this straight. You're saying that before she has the authority to seize the bag, she must identify the contents of that bag as being contraband? Under People v. Jones, the question is whether the container has a distinctive configuration that would indicate that it's used to hold drugs. In that case, it was a one-hitter box, which is used only to carry cannabis in that case. Didn't she testify that she had seen 300 or so similar knotted bags and they all turned out to have contraband? No, that wasn't her testimony. She said that she had made around 300 arrests, but in contrast to Jones and in contrast to Washington, she didn't take from her experience and articulate a reason why otherwise innocent conduct, such as carrying a plastic bag, would be sufficient. There was, in addition to no specific testimony with regard to the packaging, no testimony as to drug activity in the neighborhood, no recent tips, no hand-to-hand transaction, no drug paraphernalia, no odor of drugs. Officer Romano testified that she didn't believe my client was armed. Under the totality of the circumstances, the seizure in this case was not justified. What's your best case? Best case is People v. Jones, Your Honor. In that case, the court upheld the seizure under the Plain View Doctrine, but the officer in that case had been specifically trained with regard to these one-hitter boxes and had uncovered them 24 times before and every time a drug had been found. There's nothing remotely incomparable in this case. It also contrasts this case with People v. Washington where there was... There is a difference between a one-hitter box and a plastic bag, no? Yes, Your Honor. One is used to evade or one is used to indulge in the contraband. The other simply is a means of carrying it. Yes, and it can be used... And so why should carrying it, you know, be comparable to a one-hitter? Why should we require such a high showing for when it's just a means of keeping everything together as opposed to actually using the contraband? I think that we should maintain a high standard with regard to plastic bags in particular because they are used so often and because this was... You know, she took what was in my... Too many false positives? I'm sorry? Too many false positives otherwise? Yeah, there needs to be, under Jones, this distinctive aspect of the caner that would show that otherwise, really, an officer could, without... Unless we required more, an officer could really walk up to anyone on the street and take a plastic bag out of their pocket. Counsel, what is... Let's go back further. What is your take on the significance of the fact that this passenger sitting in the car made a snide remark to the police officer? Are you concerned at all whether or not that gave rise to probable cause for her to ask him to step out of the car? Well, I think under the cases, the officer could have asked him to step out of the car under any circumstances, but given that there was already a legitimate traffic stop. But with regard to the snide remark, I'm not aware of any case that says that being rude to the police officer gives rise to probable cause. What if being under the influence of drugs makes you more likely to give a snide remark to an officer than you otherwise would? I think that that's speculation. There was no evidence that my client was under influence at all. No bloodshot eyes, no smell on the breath, that sort of thing. Do you have that sort of thing when you're indulging in whatever he had? With regard to cocaine and heroin, I'm not sure. I think he might have perhaps been more fidgety or more laid back, but it might be demonstrated in this case. Talkative? All we heard was a snide remark. It wasn't particularly chatty according to Officer Armato's testimony. In any event, the trial judge didn't rely on that to issue his ruling, right? That's correct, Your Honor. Well, the court didn't mention the snide remark, but it was basically just a summary of the evidence in the court. It denied the motion to suppress. I would ask your court to follow cases that find that plastic bags alone are not immediately incriminating. They can be used for many legitimate purposes. It cannot be possible that all plastic bags can be searched indiscriminately. We need more, such as evidence of drugs, and there was no such evidence in this case. So you want us to write that a plastic bag standing alone is not enough for a valid search? That's right, Your Honor. At the very least, under the totality of the circumstances, in this case it wasn't sufficient. And so do we take the facts? Are there any disputed facts from below? Between you and the State? No. I would say that even under the State's version of the facts, that there was a Fourth Amendment violation here. Right. Unless Your Honors have any more questions? Thank you, Counsel. We will have a brief rebuttal. Thank you. May it please the Court. Tell us, what's your best case? Tell me your name again. Michelle Hemphill for the people of the State of Illinois. My best case is the people versus Hiltz. Spell your last name. H-E-M-P like Peter, H-I-L-L. Thank you. Go on, Ms. Hemphill. My best case is people versus Hiltz. And in that case, based on the totality of the circumstances, which included the early morning hours, the presence of a unique plastic bag, and the officer's previous law enforcement experience, the Court held that the officers had probable cause to search the car where a defendant was a passenger when the car was pulled over for having expired license plates, and the officer saw a knotted piece of plastic baggie on the floor of the backseat of the car. And people versus Hiltz wasn't at stop in a high-drug activity area? That's correct, Your Honor. And this was not? Well, there's no testimony that this car was stopped in a high-drug area. That's correct, Your Honor. So did that case turn on the condition of the plastic, that being a knotted bag in the car, and is there, was there, did the officer observe prior to her seizure the knot in the bag? Yes, in this case, based on the totality of the circumstances, the... Well, when you recite totality of the circumstances, it's the testimony either is or it isn't that way, and we can't add to the testimony, and we can't detract from the testimony. Did the officer testify that she saw the knotted bag, the plastic bag, before she seized it? Yes, the officer did testify that this bag was a clear, knotted plastic bag that was in the defendant's front right pants pocket. Did she testify that the two to three inches that she saw of the bag, at least on direct examination, those two or three inches had a knot in it? I believe she testified that the two to three inches were sticking out. So that's the only part that she could have seen, right? The sticking out part. Did the two to three inches of the bag that was sticking out have a knot in it? I believe she testified to that on cross. I believe on direct examination, you're correct, that it's the two to three inches of the, I'll call it the top of the plastic bag, that's sticking out from the defendant's pants pocket. Counsel, have you gone shopping at any of the grocery stores and you buy a peach or a plum and you put it in a plastic bag, usually there are no stays that you can tie it, so you put a knot in it. Could that not easily have been a plum in his pocket, you know, with plastic? I mean, there are so many uses for plastic. You're absolutely right. Can I interrupt? Let's reduce it a little further. There are these seeds that are sold at grocery stores, pumpkin seeds, all sorts of seeds that aren't as big. If you buy a very small quantity of seeds, you put it in a little plastic bag and as Justice Hall pointed out, there's no stay, you twist the bag, you tie it, and you knot that. That's correct. So when it comes to the plum or the peach, no, it could not fit in his front pants pocket, it's too large and there was no bulge, there was just this protruding two to three inches of the plastic bag, just the top. When it comes to the seeds, that's correct, but again, when we look at the facts, that this is 2 a.m., Officer Romano was driving her squad car westbound on Fullerton when she observed a defendant who's the passenger driving northbound on Menard. She sees defendant throw a large can out of the car window and that's when she stops this car and she approaches on the passenger's side intending to cite defendant for littering. So based on these facts, no, it's not possible that these are seeds because of all of the facts surrounding this case. Why is it not possible that they were seeds because he threw some pop out the window? What's the connection? Officer Romano testifies that this seemed like some type of large can. She says it might have been some type of garbage, but she knew the defendant was littering and that's what made her approach the vehicle. But the question is, what made her pull the plastic out of his pocket? It's because it's protruding 2 to 3 inches and also it was based on her prior law enforcement experience and she testifies that she, um, that she took part in 300 to 400 narcotics-based arrests. She also received training in narcotics detection and in narcotics... What was incriminating in the nature of what she observed that's what this case turns out. What's incriminating about a piece of plastic hanging out of somebody's pocket? According to Officer Romano, the incriminating nature of this plastic bag is immediately apparent. It's not a clear plastic bag. Not immediately, a direct examination. She didn't say anything at all about it. Right. She testifies to that on cross-examination. But based on her prior law enforcement experience, it's because of, it's based on the fact that she, this is how narcotics are packaged. And we have case law that supports the fact that narcotics are packaged in this way. And in People v. Hilt, the officer in that case conducted 50 to 100 narcotics-based arrests. And in that case, he testified that drug dealers often package cocaine in this fashion by using... Ms. Hemphill, the experience of the officer, would you be suggesting that the experience of the officer permits the officer to make a deduction from what was observed to the conclusion that it was a plastic bag containing narcotics or contraband? Well, it's, the central requirement of the Fourth Amendment is reasonableness. And in this case, Officer Romano's seizure of this clear, knotted plastic bag was reasonable. Counsel, is it true that our own Supreme Court has said that the subjective belief of a police officer was not sufficient basis for the search in People v. Simmons? Well, in, it's that the probable cause of the seizure is based on... Sorry, someone's siding tape. And the, it does state that the totality of the circumstances can include the officer's knowledge based on her prior law enforcement experience. And that's what can permit the seizure and that's what took place in this case. So you're saying that the, that the officer's statement isn't purely suggestive, I mean subjective. It is based on her? It's based on her prior law enforcement experience. And she has a, she has significant more law enforcement experience than some of the other cases where we have, even in People v. Washington, that officer testified that he had 300 prior narcotics based arrests. And here we have an officer with 300 to 400, 14 years on the Chicago Police... Did she ever testify to her experience of observing plastic bags in individuals that had been stopped in the early morning hours after having, you know, drawn their attention to them? And that, the plastic bags that she observed even a little bit protruding out of the pocket tended to, were, were very likely to contain contraband? No, Your Honor. She does not specifically testify. Would that be the sort of experience that we would be looking for to uphold the officer's experience as permitting this sort of seizure to occur? Right. That, that type of specific testimony is helpful. That, however, based on her, her 14 years, almost 14 years with the Chicago Police Department and the fact that she did specifically testify to the 300 to 400 prior narcotics based arrests, that it is implied that she has encountered these clear knotted plastic bags before and there's case law that states that even in People v. Hilt when that clear plastic, knotted plastic baggie is empty, it still is distinctive enough. It's implied, but there's no evidence. You're saying. I'm, I'm sorry, Your Honor. I can, I can win for it, that that's implied. There was no testimony to that effect? The specific testimony definitely would have been helpful, but based on her, based on her years, she never testified that she had not encountered these, but she did, she does have 14 years on the fourth and the reason that the seizure in this case was reasonable is because it met all three requirements of the plain view exception to the warrant requirement. And under the plain view exception, an officer may seize an object without a warrant if the officer is lawfully in the place where she sees the object. The officer has a lawful right of access to the object and the municipal code of littering has been violated in this case. Also, she has a lawful right of access to the object because she had probable cause to believe that this unique clear knotted plastic bag contained contraband. And based on the totality of the circumstances including her prior law enforcement experience, the officer had probable cause to believe that this clear knotted plastic bag contained contraband, just as the court found in People v. Hilt. And similarly here, in denying defendant's motion to quash arrest and suppress evidence, the court considered the totality of the circumstances including the early morning hours that it was 2 a.m. that defendant threw a large can out of the window in plain view of the police. Then the defendant also had a snide response when questioned about throwing out this large can. And also, the officer saw 2 to 3 inches of the bag and based on her prior law enforcement experience, she thought it contained drugs and she took it out. Also, the incriminating nature of this bag was immediately apparent to the police officer. And based on People v. Washington. Like your People v. Hilt, this was not in a high drug activity area. Like People v. Washington, there was no fleeing of the suspect. Is that correct? That's correct, Your Honor. It was different from this case. Right. They received a tip about drug activity taking place in that case. But that is why the officer was lawfully in the place that falls under the first prong. Here, the facts are different. The officer is lawfully in the place where she sees this object because of the drug activity. Also, we have case law that says this is the way that narcotics are packaged. Not only in Hilt, but also in Washington. The officer testified that cocaine is frequently packaged in small, transparent plastic bags. That's true. Seats are. But there are other ways to package drugs or to use drugs. However, as the court found in People v. Hilt, that this plastic bag that is knotted and that's very small and the test in this case showed that the first bag that was recovered from the defendant's pocket contained 0.9 grams of cocaine and out of that same pocket Officer Romano recovered 0.3 grams of heroin out of the same pocket in another clear, knotted plastic bag. So we have case law that shows that this is the way that narcotics are packaged. Also, in denying defendant's motion to reconsider the court's denial of defendant's motion, the court found that Officer Romano testified clearly that as soon as she saw the plastic bag, she knew it contained narcotics. The court found that the search was minimally invasive because Romano grabbed the knotted plastic bag without even going into defendant's pocket and Romano had the requisite knowledge to  the crime and to  defendant's conviction for possession of controlled substance. Thank you.